The next case today is Thomas Forbes v. BB&B Acquisition Corp. Appeal Number 21-1257. Attorney Tangretti, please introduce yourself for the record and proceed with your argument. Thank you. Judge Lynch, and may it please the court, my name is Dino Tangretti and I'm here for the estate of George Forbes, the appellant. Judge Lynch, may I reserve one minute for rebuttal? Yes, you may. Thank you. This is an important case about the critical federal interest of protecting the public from dangerous motor carriers on our nation's highways. One of the questions asked by this case is whether an employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor. The answer to that question is yes, and it has been yes in the Commonwealth of Massachusetts for more than a hundred years, going back to the case of Carson v. Canning, a case written and the opinion by Justice Holmes. That was a case in which a pawnbroker, the owner of a pawnshop, was held accountable and responsible to a patron who had lost goods to an unreputable manager of the pawnshop. And Holmes… I'm sorry, why, as I understand it, the defendant had a contractual arrangement that caused this truck to go to a certain place. It ended at that point, the contractual relation. Now the truck is on the way back, the contract is over, unfortunately there was the accident at that point, and yet you seek not… This isn't like the pawnshop and the patron. You are seeking to hold the company whose contractual relationship had ended liable for something that goes well beyond the contractual relationship. So that's the beginning of several different problems you have in the case. I recognize that, Your Honor, and I think it depends on what we determine the contract was for. You see, transportation was not incidental to the job. Transportation was the job. Now the delivery was over, yes, but the contract was for transportation. And I think it's crucial to look at page three of my brief in which I gave the court a map. But why does the contract go beyond delivery? Judge Thompson, again, the contract wasn't simply for delivery. It was for transportation. And the transportation that went out to Dalton… Of course transportation for delivery. Transportation was the contract. They were hired to transport lumber to Dalton. Were they hired to return from Dalton? Well, they were paid. They certainly were. It was understood that this tractor-trailer truck, Gregory Trucking and Wiley-Lenoux Hooks, the driver, it was understood by the Rhode Island company, the defendant, that this truck was to leave Rhode Island and proceed to Munson empty, pick up a load in Munson and go back to North Carolina. No, no, but for the thing that was hired, the delivery that was hired, suppose after that delivery, the truck driver said, you know what, I quit. I'm never driving a truck again. I've had it. Would there have been a breach? A breach of the contract with BB&S? Right. I would say quitting and abandoning the truck. But the truck didn't belong to BB&S. After delivery, would there have been a breach if the truck driver said, I quit as a truck driver. That's my last delivery ever. Probably, but he didn't quit. He was going... Probably? How would there have been a breach with the contract with BB&S? If he had made the delivery, was contracted to make, and then quit as a truck driver, how would that be a breach of his contract with BB&S? Well, it wouldn't be, but somebody wouldn't be dead either, Judge Barrett. No, okay, but that's just showing that the accident that caused the death occurred after the contract had been completed. Well, I guess again, we differ about what the contract was for. Four minutes remaining, four minutes. The truck had to drive into Dalton. It had to drive... Is there some language in the contract that you're pointing to, to suggest that the contract had not ended? Well, first of all, we don't have an official contract. We have a bill of lading and an oral agreement. So no, there's no discussion about that. However, the knowledge of the defendant as to where Gregory Trucking was going to go, that is one thing. But you're talking about what was foreseeable to occur after the delivery, and I don't disagree with you that it might have been foreseeable that something would occur after delivery. Some transportation would occur. That's not the same thing as saying that there was a contractual obligation on the part of the driver to do anything after the delivery occurred. Well, it was well known to everybody, each party involved, where that driver... But then what you're making an argument about is that there is liability based on the reasonable foreseeability of post-contract actions. That's right, Judge Barron. That's a different argument than saying the post-contract actions weren't post-contract because they were part of the contract. So if you're going to make an argument that there was liability even for actions that occurred beyond the contract, the pawnbroker case doesn't help you because that was on the contract. You need a case that says there can be a liability for consequences that are after the contract's reasonably foreseeable to the contracting parties. The risk foreseen defines the duty owed, as you say. So what is a case that suggests in the negligent contracting context that proximate cause can apply to actions that post-date the contract? Do you have any case that says that? I don't think we cite anything post-contract. If that's the situation here. But there's numerous examples that one could cite. If an electrician comes to your house today and does some work, and because of that work it burns down a week from now. Yeah, but that's because of actions that he took that he was contracted to take. This is conduct that occurs after the contract occurred. Well, Judge, again, I'm going to say they hired him for transportation. He drove into Dalton. He had to drive out. There's both legs of that trip are necessary to complete the deal. Mr. Tagretti, this truck driver and his company could have entered into a contract post-delivery to pick up something there and drive it someplace else, correct? At which point, Your Honor, I'm not following you. The contract was to deliver to a particular place. Okay, that's over with. Wasn't the company providing the truck and the driver free then to enter into a new contract to pick up somebody else's load, not this defendant's load, and deliver it someplace else? That's usual in the trucking industry. That happens all the time. I think it's important to recognize that the trucking company, Gregory Trucking Company, knew nothing about this trip, never gave permission, never gave consent. But that's not an answer to my question. So, yes, a truck company is always free to pick up another job unless they're committed somewhere else, which was the case here. Gregory Trucking was committed. Where in the bill of lading does it say that Gregory Trucking could not have picked up a load for a different customer? Before it delivered the lumber to Duluth? No, after delivery. The bill of lading did not say anything about that. Okay, going back to Judge Barron's question, I take it you are making a factual assertion that on your view of the facts, the contract was not for transportation to a delivery point, but was for transportation beyond that delivery point to wherever. Correct? Yes, Your Honor. Okay, and you have no case that establishes the legal proposition that there is a duty that goes beyond the actual delivery place to foresee and be liable for any resulting harm post-delivery? I don't think we cite any such case other than basic negligence principles about- Okay, I've got it. Thank you. That's time, Judge. Okay. At this time, would Mr. Tengrede please mute his audio and video, and would Attorney Stewart please unmute audio and video. Introduce yourself on the record to begin. Yes, Your Honors. John Stewart for the Appellee BB&S Acquisition Court. May it please the Court. The district court correctly held that there was no duty for a shipper of goods that hired a motor carrier to deliver its goods for an accident that happened after the contract was fulfilled. This lumber of BB&S was carried from Rhode Island to Dalton, Massachusetts, under a bill of lading that called for FOB, free on board. After the goods were delivered- I'm sorry, sir, are you having a technical problem? I'm looking frozen up, Mr. Toomey. Shall I continue? Yeah, I think we can hear you. Okay. Please go. Very good. Your Honor, it was an FOB bill of lading contract between BB&S and Gregory Trucking. After the goods were delivered, Gregory Trucking had totally completed its contract for BB&S. BB&S had no further responsibility as the shipper of goods, and it's our position that, as the Court has noted, that the duty of care ended upon the delivery of goods. There was no control of BB&S for the actions of Gregory Trucking's driver. There was no dictating the route. There was no dictating the delivery time, what equipment to use. No equipment was provided. There was no control on how to secure the load. None of the hallmarks that we would associate with control. Taking all that to be true, I'm just curious about the record. Did the record show anything about what your client knew about where the deliverer truck was headed next? Yes, Your Honor. This delivery took place first thing in the morning. The previous evening, the driver, Mr. Hooks, had a phone call checking in with the home office in North Carolina saying, I took a short load. I'm going to Dalton tomorrow. The agent on behalf of Gregory Trucking, who happened to be the sister of Mr. Gregory, she was actually the 30B6th opponent on behalf of Gregory. Although she didn't actually work for Gregory, but I will suggest she was a duly appropriate agent to accept that information for me to suggest to you that, and it was accepted by Judge Mastrianni, that Gregory Trucking knew about this delivery before it took place. He knew that the goods had been taken from Rhode Island. Yeah, I'm sorry. I'm asking, you're BBS, right? Yes, Your Honor. I'm asking, is there anything in the record to show where BBS, if BBS knew where the truck was going after the delivery it contracted for? I don't think so, Your Honor. If it was, it was very informal. It was nobody binding themselves to doing any particular thing, but there's always another trip. So, as a general matter, BBS would have known that the, whether it was directly another pickup in Dalton or another pick... Just on that point, and just help me think through this question of proximate cause and how to think about proximate cause. So, let's assume that Massachusetts, like other states, adopts a negligent contracting tort, okay? And let's say that in consequence of that, if they didn't check into a bad driver's history and contracted with them anyway, and he does a delivery for them, they've now played some role. This is just, I want you to respond to it, I'm not saying I agree with this. They've now played some role in putting a bad driver on the road. If there's always another trip, it stands to reason that when they do that, it's reasonably foreseeable to them that they put a bad driver on the road who's going somewhere. So, why under just basic proximate cause analysis couldn't one say it's reasonably foreseeable to the contracting party when they didn't do their duty of care as to putting a bad driver on the road, put one on the road when it was reasonably foreseeable that they've now occasioned a circumstance in which he's a risk to other drivers. What's wrong with that logic? Your Honor, there are limits on but-for causation, and essentially it comes down to a... Five minutes remaining. It comes down to a determination of policy, and so far the Massachusetts courts have not gone there. It would be a big step to accept the negligent selection of an independent contractor, exception to the general rule of non-liability for people that hire... Some jurisdictions have accepted it, and Massachusetts has never rejected it, correct? Your Honor, it has never rejected it, and it's significant to me... In the jurisdictions that have accepted it, how do they handle this problem of post-contract conduct that in a colloquial sense is reasonably foreseeable? In other words, how do they do the policy analysis of when I put somebody in play by contracting with them who I had no business doing that, we posit that there was a breach of care. Now, I know there's a case out of Illinois in which the Boy Scouts hire somebody who's a predator, and they didn't do any checking. They put that person then in contact with kids. That's dangerous. Then after he's met the kid, he's no longer a Boy Scout supervisor, he then molests one of the children. Well, as a policy matter, is that on the negligent contractor, or are they absolved of all responsibility because whatever happened after the contract's not their fault? By analogy, similar type of question here. You negligently put a bad driver on the road. You know he's going to be driving after your trip. He now hurts somebody after that. You played some role in putting him on the road. Should you be liable? How do we think through that? We say Massachusetts, no reason to think they wouldn't adopt a negligent contracting just like other states. Then how do we do proximate cause analysis? What's your view about that? Mr. Stewart, I know in your brief you argue, well, Massachusetts hasn't adopted this doctrine, and that's what you started to argue before. That is not the question before you. If Massachusetts were thought to be open to adopting this doctrine, you are now being asked the separate question of even in those jurisdictions which adopt that doctrine, would the but-for analysis extend beyond the contractual delivery date? Your Honor, it's our position no, and I would draw your Honor's attention to the Valdez case out of New Mexico that is referenced on pages 12 and 13 and 24 of my brief. I believe that New Mexico recognizes section 411 of the restatement. That was a case where a contractor was hired and had totally completed its job for the day and was returning back to where they stored their truck for the evening when an accident occurred, and it was found that there was no duty that continued on for the hire. Am I right that I could be misremembering this? I thought your opponent said that there's 411A and there's 411B, and Valdez was under A and this is under B, so Valdez doesn't really apply. Your Honor, I cited a number of cases that talk about different scenarios, and I've tried to think about different duties of care that end under contracts, and the school bus case was one, and there was another trucking case out of Pennsylvania. There are several cases that hold that where we're talking about potential negligent selection of an independent contractor that does not carry on beyond the time that the contract is fulfilled. As far as accidents and injuries that occur after that, so that would be our position in the case. Okay. Anything else? Your Honor, I would add more, but I think you've got the gist of where we're coming from. My client hired Gregory Trucking to carry ordinary goods. There was nothing inherently dangerous about them. My client had no control of this delivery, even during the time the contract was being performed, and certainly no responsibility after. That's time. Okay, thank you. Thank you, Your Honor. Thank you. Attorney Stewart, please mute your audio and video. Attorney Tangredi, please go ahead and introduce yourself back on the record to begin your one-minute rebuttal. Thank you, Mr. Toomey. Dino Tangredi for the appellant. Judge Barron, I want to clarify the record. You asked the question about what BBNS knew and when they knew it. BBNS knew exactly where this truck driver was going to go after the delivery to Dalton. They knew that before they hired him. That's in the record appendix at page 1618. Very clear. In fact, well, let's talk about Valdez for a quick second. Judge Barron, you pointed out the difference between 411A and 411B. The court in Valdez talked an awful lot about 411A, which is what we're talking about, and they said it would apply, except there was no evidence in the Valdez case that would have shown it was an incompetent contractor. That's in stark contrast to this. We have such an incompetent contractor being hired by BBNS, and it was so easily to learn and determine that they set this track to trailer truck on a mission, and I think our experts said it wasn't a matter of if something would happen, it was when. So Valdez is a good case as well for us. It follows the Mendez case from Massachusetts, the 128. Was there a separate suit filed against Gregory? There was, Judge Thompson, and we actually tried that case in September against Gregory in the district court to a jury. Okay. And we supplemented the appendix to bring our docket sheet up to date and to make that procedural information available. Okay, thank you. Thank you. That concludes argument in this case. Attorney Tengrede and Attorney Stewart, you should disconnect from the hearing at this time.